[620 NYS2d 494]

In the Matter of STANLEY POLANSKY, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, January 9, 1995

## APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Muriel L. Gennosa* of counsel), for petitioner.

*Peace, Agresta & Lemke,* Mineola *(Ernest J. Peace* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was charged with five allegations of professional misconduct. The Special Referee sustained all five charges. The Grievance Committee moved to confirm the report of the Special Referee. The respondent submitted an affirmation urging that the Grievance Committee's failure to adequately support the charges with competent evidence, coupled with the emotional and psychological distress occasioned by his marital difficulties, be considered by the Court in mitigation of any carelessness on the respondent's part.

Charge One alleged that the respondent misappropriated and converted client escrow funds for purposes other than that for which they were intended. The respondent represented the seller in a contract of sale relating to estate property located in Kingston, New York. The contract price was $77,500. The contract of sale provided for a down payment of $7,750 to be held by the respondent in an interest-bearing account. The purchasers paid a binder of $740 to the realty company handling the sale for the estate. The respondent received the remaining contract down payment of $7,010, which he deposited in his Norstar Money Market savings account, an interest-bearing account, on September 30, 1987.

Prior to the closing of title, the seller and the purchasers entered into a possession agreement and the purchasers took possession of the premises.

Title never closed between the purchasers and seller, and each claimed a right to the contract deposit. Civil proceedings were commenced to determine which party had the right to the down payment.

By order of the Honorable Francis J. Vogt of the County Court of Ulster County, dated February 11, 1991, the purchasers' motion for summary judgment was granted and the respondent was ordered to return the down payment, together with interest from September 30, 1987, at the rate of 9% per annum. The order was affirmed by the Appellate Division, Third Department, on February 27, 1992.

By letter dated April 27, 1992, the purchasers' attorney, John J. Darwak, advised the respondent that he was accepting the respondent's escrow account check in the amount of $7,413.08 and the respondent's general account check in the sum of $740 as partial payment without prejudice to the

purchasers' claim for the balance of the monies due them. The letter unequivocally informed the respondent that under no circumstances should the acceptance of partial payment of the amount due be considered an accord and satisfaction.

The respondent was entrusted with $7,010 from September 30, 1987 until his release of the funds in April 1992. The account in which the respondent initially deposited the contract down payment was closed on May 9, 1988, and its balance was transferred to the respondent's Norstar Multi-Client escrow account. During the period in which the respondent was required to preserve the $7,010 with no disbursements on behalf of the purchasers or seller, the balance in his Norstar Multi-Client account fell below the required amount on 13 occasions. On April 8, 1991, the account showed an overdraft.

Charge Two alleged that the respondent commingled personal and client escrow funds. In essence, the respondent received settlement funds, deposited them into his Norstar Multi-Client escrow account, and thereafter drew checks payable to his clients while failing to remove his fee, due on each client matter, from the escrow account.

On or about June 22, 1988, the respondent deposited $10,000 into his Norstar Multi-Client escrow account on behalf of a client. On or about July 5, 1988, the respondent issued his client an escrow check, representing the client's portion of the settlement, in the sum of $6,646.67. No corresponding check representing the respondent's fee was issued from that account.

On or about July 11, 1988, the respondent deposited $9,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about July 20, 1988, in the sum of $5,319.29. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about October 6, 1988, the respondent deposited $15,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about October 12, 1988, in the sum of $9,924.17. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about October 12, 1988, the respondent deposited $7,500 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or

about October 21, 1988, in the sum of $4,979.50. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about October 27, 1988, the respondent deposited $15,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about November 2, 1988, in the sum of $7,081.50. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about March 6, 1989, the respondent deposited $3,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about March 13, 1989, in the sum of $1,889.50. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about May 30, 1989, the respondent deposited $2,908.80 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about June 1, 1989, in the sum of $2,116.87. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about May 30, 1989, the respondent deposited $10,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about June 15, 1989, in the sum of $6,047.53. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about June 12, 1989, the respondent deposited $9,425 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about June 15, 1989, in the sum of $6,087.84. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about August 17, 1989, the respondent deposited $10,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about August 22, 1989, in the sum of $6,392.20. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about September 7, 1989, the respondent deposited $10,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about September 13, 1989, in the sum of $6,569.41. No corre-

sponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about September 18, 1989, the respondent deposited the sum of $12,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about September 21, 1989, in the sum of $7,815.50. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about October 4, 1990, the respondent deposited $7,500 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about October 15, 1990, in the sum of $4,750.67. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about October 12, 1990, the respondent deposited $1,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about October 16, 1990, in the sum of $655.17. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about October 29, 1990, the respondent deposited $2,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about October 30, 1990, in the sum of $1,243.34. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On or about November 13, 1990, the respondent deposited the sum of $10,000 into the subject account on behalf of a client. The respondent issued the client's portion of the settlement on or about November 16, 1990, in the sum of $6,483.50. No corresponding check representing the respondent's fee was issued from his Norstar Multi-Client escrow account.

On the following dates, the respondent deposited personal funds into his Multi-Client escrow account, thereby commingling personal and client funds:

(1) November 21, 1988: deposit of $405.07, representing a tax refund relating to his personal residence.

(2) April 13, 1989: deposit of $10,000;

(3) November 8, 1989: deposit of $4,500, representing the proceeds of a personal loan from the Long Island Board of Realtors;

(4) November 9, 1989: deposit of a referral fee;

(5) November 9, 1989: deposit of $21,999.70, with the check register indicating loan;

(6) November 27, 1989: deposit of $6,909.76, with the check register indicating loan;

(7) January 31, 1991: deposit of $2,495.35, representing a personal refund of Surplus Escrow from Reliance Federal Savings Bank.

Charge Three alleged that the respondent failed to maintain required bookkeeping records relating to his client escrow accounts. Specifically, the respondent failed to maintain for seven years after the events they record, a record or ledger identifying the date, source, and description of each item deposited, as well as the date, payee, and purpose of each withdrawal or disbursement, at or near the time of the event.

Charge Four alleged that the respondent converted and misappropriated client escrow funds for purposes other than that for which they were intended. On or about June 10, 1988, the respondent received and deposited into his Multi-Client escrow account the sum of $8,000 as a contract deposit on a client matter. During the intervening period between contract and closing, the balance in the respondent's Norstar Multi-Client escrow account fell to $5,018.59 on September 28, 1988, with no disbursements with respect to that matter.

On or about November 14, 1990, the respondent received $10,000 as a contract deposit on a client matter and deposited that sum into his Norstar Multi-Client account. During the period between contract and closing, the balance in that account fell to $6,133.62 on January 28, 1991, with no disbursements with respect to that matter.

From approximately September 1987 until 1990, the respondent received monthly note payments on behalf of a client matter in the amount of $507.26. The respondent deposited those sums into his Norstar Multi-Client account. As of April 1, 1989, the respondent was supposed to be holding a minimum of monthly deposits totalling $9,130.68. Prior to any disbursements on behalf of that matter, the balance in the subject account on April 1, 1989 fell to $5,307.40.

Charge Five alleged that the respondent failed to account for and release interest generated upon escrow funds. During the years 1987 and 1988, the respondent maintained a Money Market savings account at the Norstar Bank. During that interval, the respondent maintained client escrow funds in that account.

During 1987, the subject account earned $2,975.50 in interest. The interest earned for 1988 was $1,564. The respondent failed to account for and disburse the interest earned on the escrow funds to the parties to whom the escrow funds belonged.

The petition alleges that in committing the above-described acts, the respondent knew or should have known that he was guilty of professional misconduct in violation of Code of Professional Responsibility DR 1-102 (A) (8) (formerly [6]) (22 NYCRR 1200.3) and DR 9-102 (A), (B) and (D) (22 NYCRR 1200.46).

After reviewing the evidence adduced and the exhibits, we conclude that the Special Referee properly sustained Charges One through Five. Accordingly the petitioner's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, we have taken into consideration the respondent's contention that the acts of misconduct with which he was charged were the result of carelessness, neglect, irresponsibility, and depression, as opposed to being intentional or willful. Significantly, the respondent was issued three Letters of Caution between September 1986 and May 1993 and was admonished on April 7, 1987, for neglecting a legal matter. Notwithstanding the respondent's representations that he is genuinely remorseful and that he suffered from severe mental anguish and depression, he is guilty of serious professional misconduct for his repeated withdrawals of escrow funds without the authorization of the parties concerned, for his deposit of personal funds into the escrow trust accounts, for his failure to maintain escrow records in accordance with the rules of this Court, and for his failure to remit the interest earned to the appropriate escrow beneficiaries. Under these circumstances, the respondent is disbarred for his professional misconduct.

MANGANO, P. J., SULLIVAN, BALLETTA, ROSENBLATT and THOMPSON, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Stanley Polansky is disbarred and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that Stanley Polansky shall promptly comply with

this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Stanley Polansky is commanded to desist and refrain (1) from practicing law in any form, either as principal or as agent, clerk or employee of another, (2) from appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) from giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) from holding himself out in any way as an attorney and counselor-at-law.